**Affirmed and Memorandum Opinion filed May 9, 2024.**



In The

# Fourteenth Court of Appeals

---

## NO. 14-23-00146-CV

---

### ERNEST ADIMORA-NWEKE, Appellant

### V.

### BETHRAND I. OHAKWEH, DEPENDENT ADMINISTRATOR, Appellee

---

**On Appeal from the Probate Court No 1**
**Harris County, Texas**
**Trial Court Cause No. 444,609**

---

## MEMORANDUM OPINION

Appellant, attorney for dependent administrator (and other family members) in probate administration, asks that we reverse the probate court's January 5, 2023 order approving the account for final settlement and its February 2, 2023 "Drop Order" removing the case from the probate court docket. We affirm.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In 2015, appellant, Ernest Adimora-Nweke, executed a contingent fee

contract with Aphaeus Ohakweh to represent Ohakweh principally for claims against his health care providers. When Ohakweh passed away in September, Ohakweh's surviving family members signed contingency fee agreements for Adimora-Nweke to continue to pursue those claims on behalf of Ohakweh's estate and to represent them in their independent claims against the health care providers. The family also agreed for Adimora-Nweke to handle the probate of Ohakweh's estate. The agreement provided for work on probate matters to be at an hourly rate but "payable on receipt of proceeds for claims brought on behalf of the Estate of Decedent", specifically:

I hereby appoint The Firm as attorney-in-fact for any actions available or brought on behalf of the Estate of Decedent, with terms of payment for legal professional services as below:

(a) Probate Services (i.e. hourly billable services for establishment of Estate Administrator, Motion, Hearing, and Order for Attorney Ad Litem, Waivers, and Citation by Publication, etc):
- $0 retainer fee, and ▆▆/hr accrued and payable upon receipt of proceeds for claims brought on behalf of the Estate of Decedent.

(b) Legal Services for litigation or settlement of claims on Behalf of The Estate of Decedent:
- (Contingency)▆% to Estate of Decedent and ▆% to Adimora Law Firm.

The probate-services provision, though hourly, is dependent on the successful receipt of proceeds of claims brought on behalf of the Estate of Decedent.

Appellant assisted the family in instituting the probate proceeding and the appointment of Ohakweh's eldest son, Bethrand I. Ohakweh, as administrator. Specifically, on November 30, 2015, appellant filed on behalf of Bethrand Ohakweh ("Bethrand"), his "Application for Independent Administrator & Application for Judicial Declaration of Heirship." Appellant signed the pleading

2

as "Attorney for Applicant." On January 26, 2017, and again on July 27, 2017, the trial court ratified appellant's contingency fee agreement.

The record provides indicia of appellant's pursuit of multiple claims on behalf of the estate and his family members, but no indicia of successful recovery. Relevant to his work for the estate and family, appellant filed two federal court actions which were consolidated in the Southern District of Texas, and resulted in prejudicial dismissals of claims against Baylor, Harris Health and Halpern. Shortly after the Fifth Circuit affirmed the dismissals in those cases, appellant filed—and the federal district court dismissed—the same or similar claims under a new cause number. Appellant ran into problems representing the family in the federal court: His *pro hac vice* applications were denied and he was forbidden to represent the family in the matter unless certain conditions were satisfied, including the retention of another attorney who was board certified in civil trials. Unable to retain sustained assistance in these litigations, the matters were left to the clients to handle *pro se*.

Seeking an end-around to the federal court's bar to his representation, with his clients' blessing, appellant sought in probate court to have himself named administrator of the estate, hoping to appear in federal court *pro se*. Though appellant was named temporary administrator of the Estate in July 2017, this role was short-lived due to appellant's inability to post bond. Ohakweh's eldest son, Bethrand, was re-appointed as administrator of the estate by the end of the same month. Appellant filed an instrument titled "Notice of Withdrawal" which stated "Applicant, Ernest C. Adimora-Nweke Jr hereby withdraws any recusal [sic] of consideration for permanent administrator for the Estate of Aphaeus Ohakweh." Despite several hearings in the following years where the subject of appellant's re-appointment as administrator was raised again for the purpose of revitalizing the

federal claims,[1] no such re-appointment was made, with the bond-posting requirement as the primary impediment.[2]

On February 14, 2022, appellant filed a 441-page pleading titled "Original Bill of Review (Independent Action in Equity) Complaint" which unapologetically reasserts the claims previously litigated and dismissed in federal court. The pleading names appellant as a "Plaintiff and Relator" and is signed "pro se" for "the Estate of Dr. Aphaeus Ohakweh et al, and on behalf of United State [sic] of America, And on behalf of State of Texas," suggesting appellant, *ipse dixit*, to be the administrator of the estate.

The trial court sent notices to the named administrator of the estate, "Bethrand I. Ohakweh," rather than his attorney, appellant. Despite appellant's role on the case, a number of exchanges occur between Bethrand and the court, including the following:

- On July 14, 2022, the probate court issued a notice with personal

---

[1] At a 2022 hearing, the following explanation was given:

MR. ADIMORA-NWEKE: . . .In order for me to carry this [federal] case through to the very end I need to be administrator under Rule 17, then I would be basically taken in as a real party in interest in my name.

THE COURT: Why can't you get admitted? That's not a hard process.

MR. ADIMORA-NWEKE: I have followed that process many times. During this case with the extrinsic fraud that was going on, you have got to imagine this, I got sanctioned, okay, because --

THE COURT: I mean, what you are asking me to do it sounds to me is to become the dependent administrator so that you can file pro se basically.

MR. ADIMORA-NWEKE: Exactly.

THE COURT: To go around the rule of being admitted.

MR. ADIMORA-NWEKE: Yeah, because right now I have not been admitted.

[2] Appellant remained the administrator's counsel of record and appeared at various hearings in subsequent years. The court acknowledged his role as counsel for the administrator at a January 30, 2020 hearing.

citation to Bethrand, the named personal administrator at his home address to show cause for failure to file a "Final Account along with Close & Discharge".

- The record contains an ink-file-stamped September 20, 2022 letter, signed by Bethrand individually requesting that the estate be "closed and my duty as administrator be discharged." The letter is accompanied with a Final Account reporting a zero balance in all categories. The Final Account is left blank in some areas and is not signed by Bethrand.

- The record then contains a September 22, 2022 "Notice of Show Cause Hearing" letter directed and addressed to Bethrand, resetting the hearing to October 21, 2022.

- This is followed by a nearly identical letter dated October 24, 2022 directed again only to Bethrand, resetting the hearing to January 20, 2023. The October 24 notice includes a letter addressed to Bethrand from the probate judge stating that the deficiency in the original Final Account lacked a sworn affidavit from the administrator.

- On November 9, 2022, Bethrand hand filed (ink-file-stamped) an Amended Final Account again reporting a zero balance in all categories of the administration. The Amended Final Account remained left blank in some areas but is not signed under oath by Bethrand.

The record does not indicate that appellant, as Bethrand's attorney, was provided notice of these filings. Nevertheless, before the approval of the final accounting, appellant discovered the correspondences and on October 21, 2022

5

filed an objection to the accounting and objection to the closure of the estate. Appellant's October 21 Objection notifies the court of the clerk's failure to serve him as lead counsel of record. ("Petitioner, as counsel on record for administrator and family of Decedent (i.e., heirs) was not served any of the 2022 notices regarding the estate administration.").

On December 8, 2022, the trial court held a hearing on Appellant's Objection, wherein appellant complained to the presiding associate judge of the court's failure to acknowledge his role as counsel.

> THE COURT: Okay. But I think we need Bethrand here to explain why he filed the final account and why he's requested the estate be closed.
>
> MR. ADIMORA-NWEKE: Well, the final account -- well, I spoke to him, plus he filed a final account --
>
> THE COURT: But --
>
> MR. ADIMORA-NWEKE: -- because it was ordered for. There's a court order that's saying that you need to file a final account. All these communications to Bethrand were not sent to me. A lot of these issues, you know, Bethrand is getting -- because whatever they communicated with Bethrand in this matter, he's getting stressed out because he's saying, "I have counsel."
>
> So, again, now, I'm being marginalized in this court. I've already been marginalized, now, in federal court, wrongfully. I'm counsel, and you're speaking to my client without me.
>
> As you can see, the accounting that he filed makes no sense. It's wrong. Because you're asking him to do something that, you know, was -- he needs counsel. And so when they're sending him orders keeping me out, you know, basically like what is going on. And ultimately, when I speak to him, he just says "do what you will with this case, just take my name out of it because I have to go to work. I have to -- you know, I have to work with these people. I've got a wife and kids to feed."
>
> So, again, you can't blame the guy. We're not trying to go and deal with another -- or any whistleblower protection status or whatever,

6

we're just focused on this one right now.

And so far, with all of this, he's slowly -- but wants his name out of it. But he and everyone else wants justice.

Reason why he said close the accounting, obviously with all of this going on and the injustice, he's like, "well, if this is what they're saying, go ahead." But, you know, he still wants justice. He said because he doesn't know what he's doing. They're speaking to him without counsel, creating conflict of interest between attorney -- you know, counsel and his client. I mean, to leave a client exposed in a litigation like this with him involved, with so much injury. And then he's running helter-skelter and -- you know, marginalizing his counsel. It's so -- it's a due process petition for rights violation, that eventually anybody with common sense will say, "look, I mean, I just want out, I don't want to deal with this anymore." And that's what he's been saying: "I don't want to deal with this anymore."

But I have to try to convince him I'm the one to deal with this. But when I'm supposed to be dealing with this and they're plugging him in, you know, stressing him out, and margin -- keeping me out of the loop, he's wondering what the hell. I look incompetent, but I'm doing my job. So, ultimately, he's just like "deal with this. Don't -- I don't even want to show. I don't want to --"

And I'm like, "no problem, bro. I'll just call -- I'll handle everything. And I'll call you when it's time to come and resolve, you know, money. As of the estate, you don't have to worry about it. I'll put myself in there. I'll worry about getting a bond and paying for it."

THE COURT: Okay. But for -- we need him to appear so we can clarify what's going on before we make any appointment of you as administrator.

Perhaps distracted by appellant's lengthy explanation, the trial court did not acknowledge the problem concerning service to counsel. There is no record in our file of any other hearing or filing by the administrator occurring in the trial court prior to the January 5, 2023 order approving the final account.

On January 23, 2023, appellant filed another due process objection. On February 2, 2023, appellant filed a supplemental exhibit containing an email

exchange between him and his client, the administrator.  On February 2, 2023, the probate court issued its order dropping the case from its active docket.

## II. ISSUES AND ANALYSIS[3]

Appellant complains that record showing the clerk's failure to send him notices as the attorney in charge, his subsequent objection to the clerk's non-service and the resulting request for final accounting filed by the administrator *pro se*, the January 5, 2023 order approving the final account and its February 2023 "Drop Order" are "void of equal protection fair/equal administration, due process notice & fair hearing, & petition rights, for Appellant." He also argues the two orders are also facially void because the accounting "exclude[s] the survival action & qui tam claims interests of the estate" and his contracted-for compensation for legal services, all of which are dependent on the recovery of the proceeds from those claims.

To the extent appellant attempts to raise due process and other federal constitutional arguments, his brief on appeal contains only a composite of slapdash buzz words and references to general propositions, none which sufficiently articulate a cogent, legally-supported argument to demonstrate what appellant proposes: that the trial court's orders are void for lack of "due process" or "equal protection/fair administration".  Accordingly, such constitutional complaints are waived as inadequately briefed. See Tex. R. App. P. 38.1.  We liberally construe his appellate complaints to relate to a breach of the governing state court rules and

---

[3] Two notes at the outset.  First, on occasion an appellate court is presented with a record that presents such an array of mistakes by the parties or court below or a brief that fails to clearly identify any mistakes, that it must exercise an extraordinary level of self-restraint to avoid overreaching the scope of its review. This is such a case. Second, appellant presents arguments solely on his own behalf, as the aggrieved counsel, representing his own interests *pro se*. Likewise, he has named his client, Bethrand I. Ohakweh, Dependent Administrator, as the "appellee" which under our rules denotes "a party adverse to an appellant." Tex. R. App. P. 3.1.

8

Estate code provisions.

Presuming for the sake of argument that in 2022 appellant was designated as the attorney in charge for the administrator,[4] we would find a string of procedural violations by the clerk and court. There is no record that any of the trial court's 2022 notices addressed to the administrator, Bethrand, were ever sent to appellant. *See* Tex. R. Civ. P. 8 ("All communications from the court or other counsel with respect to a suit shall be sent to the attorney in charge"). None of the Bethrand's hand-filed documents, including his amended notice of final accounting, were ever ratified by appellant. Appellant objected to his lack of notice of the filings and challenged the content of the filings. Implicitly overruling these objections, the trial court considered and adopted the amended final accounting.

Presuming for the sake of argument that appellant was *not* designated attorney in charge for administrator, appellant remained the attorney for all other interested parties, heirs or distributees who were entitled to service of the citation and notice of the final presentation of the account *from the administrator*. Tex. Estates Code § 362.005(c). The record contains no proof, including the statutorily-required affidavit, showing that notice was provided by the administrator to all

---

[4] Although the record shows appellant filed and signed the first pleading on behalf of appellee, various subsequent events in the record could have disrupted this representation in the eyes of the court clerk. Most notably, appellant sought to be appointed administrator to circumvent federal court orders, then subsequently withdrew his brief appointment as administrator. In the July 27, 2017 order re-appointing appellee, the court ratified appellant's contingency fee agreement with administrator and the family, but the ratification order only confirmed appellant's continued role representing the estate in its outside litigation. Thus, on its face, the reference to the ratification order did not overtly signal appellant's representation of the reappointed administrator in the probate proceeding. Appellant never filed any written notice, pleading, or motion after the reappointment clearly indicating his role as attorney of record for the administrator. In several subsequent filings appellant signs on behalf of the estate or pro se, some of which are motions seeking his appointment. However, at times at oral hearings the trial court continued to acknowledge appellant's role in a capacity representing appellee-administrator.

other interested parties represented by appellant. Tex. Estates Code Ann. § 362.005(f). Thus, even if appellant was only representing the beneficiaries and not also Bethrand, the estate's administrator, a statutory notice violation occurred. *See id.* Before considering whether *reversible* error occurred from these notice failures, we first consider whether there was also error on the face of the judgment.

In appellant's second issue he argues that the January 5, 2023 order adopting the final account is facially improper for certain specific reasons. We limit our review to his specific contentions. He complains that the final account upon which the order was based and adopted failed to include the "survival action and qui tam claims." Tex. Estates Code Ann. § 362.004(b)(1) (property that has come into the representative's possession and the disposition of that property) and (b)(4)(estate property still in the representative's possession). Consequently, appellant contends the final account upon which the order was based and adopted also failed to include a debt reflecting that he was contracted to perform both litigation services with contingent fees for those claims and hourly probate legal counsel services such that he was a creditor to the estate entitled to receive proceeds flowing from those contracts. *See* Tex. Estates Code Ann. § 362.004(b)(3). In making its determination on the final accounting, removal of administrator and closure of the estate, the trial court would have had the discretion "to take into consideration all of the surrounding facts and circumstances." *Maxwell's Unknown Heirs v. Bolding*, 36 S.W.2d 267, 269 (Tex. App.—Waco 1931, no writ). At the time of the court's order, the court had been apprised of the pending lawsuits and appellant's objection to the accounting on file. After the December hearing, appellant's fourth iteration of claims—the 2022 Bill of Review—was removed to federal court. In considering appellant's request for the inclusion of the ongoing "survival action and qui tam claims," the probate court would have been free to take judicial notice

of prior orders dismissing with prejudice the same or similar claims, the record describing appellant's conduct and status in the federal court, and conclude the current pending claims lacked actual potential value. Consequently, we cannot conclude the court's January 5, 2023 order—because it omitted reference to the pending claims (or all of appellants attorney's fees which were contingent upon recovery of those claims)—was facially void.

We next consider whether the trial court's error in failing to provide appellant notice of hearings probably caused the rendition of an improper judgment or *probably prevented appellant from properly presenting the case to the court of appeals*. Tex. R. App. P. 44.1. We consider the latter clause first.

Of the many looming problems in the record, one stands out most: the status of appellant's representative authority over Bethrand's position as the administrator in 2022. Appellant is by no means faultless in contributing to this lack of clarity through his filings and conduct in the probate court, e.g., signing nearly every pleading in a different representative capacity, and discussing in open court his communications with the administrator thus potentially waiving any privilege. But in 2022, the probate court allowed the confusion to fester and in 2023 sealed it into the judgment. In most cases we can imagine, this ambiguity, and the probate court's failure to resolve it, would make impossible review of the propriety of its judgment (adopting appellant's proposed final accounting. However, the fact that appellant seeks review solely on behalf of his own personal interests (and the fact that his former clients do not join him) impacts our analysis to any impropriety of the judgment with respect to *appellant*. From appellant's standpoint, the only perceived harm from any error that occurred was the omission of attorney's fees based on three-times-dismissed claims that he refiled in a fourth claim. The record on appeal for this perceived omission is presented adequately

11

enough, and there is no indication that any ambiguity about appellant's status as counsel of record for administrator renders us unable to review his complaint to determine whether the court's omission of any fee (or any claim upon such a fee) was improper. See Tex. R. App. P. 44.1(a)(2).

Finally, we consider whether the trial court's failure to provide appellant timely notice probably caused the rendition of an improper judgment against appellant, i.e., whether he has shown he was harmed. Tex. R. App. P. 44.1(a)(1); *See Lempar v. Ballantyne*, No. 04-22-00621-CV, 2023 WL 8896917, at \*5 (Tex. App.—San Antonio Dec. 27, 2023, no pet.) ("If a party preserves its complaint of late notice for appeal, then the party must also be able to show on appeal that harm resulted.")

The record of the December 8, 2022 show cause hearing illustrates that even if appellant did not receive notice of the hearing he appeared and presented his objections to the proposed final accounting as it pertained to his own contractual fees with administrator and the family. Appellant contends that he expected the court to hold another hearing prior to making its order to confirm facts about his representative status with the administrator and family members, but appellant admits that he was given a chance to supplement proof of this relationship and that he did so before the trial court issued its January 5, 2023 order.

Appellant was not entitled to fees under the contracts absent a recovery, and the court was free to conclude that there was no valid claim for recovery. Appellant never provided a reasonable legal explanation for his persistent refiling of claims that had been dismissed; instead appellant conveyed his intent to use the probate process to circumvent federal court orders. Appellant persisted in blaming every failed claim in the federal court as the fault of the judge, whether it be Judge Bennett, Hughes, Gilmore, or the appellate court justices. But even if we presume

12

the fault of the federal judiciary, he never explained to the probate court how any of the subsequent claims varied from the claim previously dismissed with prejudice. Moreover, presuming no *res judicata* bar, he failed to present a prudent plan to overcome the federal court's previous orders barring his representation in the federal court. Upon the record before us, we cannot conclude appellant was harmed by any error in any failure to provide him notice of any hearing. *See Lempar v. Ballantyne*, 2023 WL 8896917, at \*5; *see also Davis v. Kaufman Cnty.*, 195 S.W.3d 847, 852 (Tex. App.—Dallas 2006, no pet.).

We therefore overrule appellant's first and second issue. Having concluded that judgment need not be reversed under the first two issues we need not address appellant's third issue, rendered moot in the absence of recoverable fees.

### III. CONCLUSION

We affirm.


/s/    Randy Wilson
       Justice

Panel consists of Justices Wise, Zimmerer, and Wilson.